## Wiles' Estate.

*Wills—Testamentary capacity—Undue influence—Meretricious relation—Evidence—Issue devisavit vel non.*

An issue devisavit vel non prayed for on the ground that testator did not possess testamentary capacity and that the will was procured by undue influence practiced upon him by the principal beneficiary is properly refused where although contestants prove that testator had meretricious relations with the principal beneficiary they produced no evidence of testator's alleged testamentary incapacity or of the alleged undue influence except the testimony of a physician who stated that decedent suffered from paresis before death without giving any facts upon which his opinion was based and the testimony of neighbors who said that decedent was ill at times and did not seem to know with whom he conversed and the testimony of a relative, who was so incorrect in her recollection as to deprive her testimony of any weight and where proponents proved by the physician who attended testator in his last illness that his mental faculties were unimpaired and by the subscribing witnesses to the will that he was possessed of mental capacity and where from the circumstances attending the execution of the will it appeared that testator was under no duress at the time.

Argued Oct. 14, 1914. Appeal, No. 81, Oct. T., 1914, by Elizabeth M. Hamilton, from decree of O. C. Allegheny Co., May T., 1913, No. 254, refusing issue devisavit vel non in Estate of John R. Wiles, deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Appeal from decree of register of wills admitting to probate the will of John R. Wiles, deceased.

Petition for issue devisavit vel non.

MILLER, J., filed the following opinion:

An issue is prayed for alleging that the decedent was not of sound and disposing mind; also, that the will was procured by undue influence, fraud and duress practiced upon him by his principal beneficiary.

It appears, inter alia, that the decedent was never

married, lived all his life in what was described as the "Tenderloin" district of this city; was ostensibly engaged in the tobacco and newspaper business; had acquired a considerable estate, consisting principally of money on deposit in four or five of the different banks in the city; that he lived and cohabited with Maggie Foley, the principal beneficiary under his will, for some seven or eight years; that by many of the people in the neighborhood she was spoken of as Mrs. Wiles.

On the part of the contestants, Doctor Ransom, who attended the decedent for a short period some three months before he died, the treatment being for an ulcer, stated that the decedent suffered from paresis. He did not give a fact upon which to base it other than that the pupils of his eyes were dilated. He detailed no act, conversation or habit, upon which to base his conclusion.

Two other witnesses are Mr. and Mrs. Dahlem who lived next door to the decedent. Beyond stating that the testator was sick; that at times he did not know whom he conversed with; that he did not seem to be properly cared for, no fact is deducible from the nature and character of their testimony, showing either undue influence or want of testamentary capacity at the time the will was made.

The remaining witness is Mrs. Gazzalo, testator's half-sister. Neither from the nature of her testimony nor the manner of testifying, can any weight be given to her statements. She is manifestly mistaken with respect to the date when she says the will was signed, it clearly being a much later period when a note transaction took place.

On the part of the proponents it appears from the testimony of Doctor Hagerty, the attending physician, that decedent was ill from, and died as the affects of tuberculosis; apparently, from the time that the doctor attended him, which was the last three months of his life, until his death, the disease made rapid progress; physically he grew weaker from day to day, but men-

tally, this witness says, his mind was exceptionally clear. He made special examination with respect to possible mental trouble, knowing the past history of the decedent and fully described the tests which he applied for locomotor ataxia, paresis, and like affections; from these, and from the circumstances and facts, conversations and instructions passing between him and the decedent, he was emphatic in stating that the testator's mental faculties were unimpaired.

The execution of the will was minutely described by the scrivener, a member of the bar; he was sent for by the testator; had a number of interviews in which the details of testator's business, his moneys and his estate were discussed; his deposits of money were verified by the scrivener in going to the banks at testator's request and ascertaining the amounts thereof; following which he received detailed instructions from testator as to what should be the disposition of his property.

Particularly significant as indicating testator's mental capacity are the circumstances leading to the appointment of his executor. It was explained to the testator that none of the banks in which his moneys were deposited acted in the capacity of executor, whereupon testator called to mind one of the principal officers in the bank in which was his largest deposit; with this officer, Mr. Fendrich, the testator was acquainted and expressed a preference that he should act as executor. The scrivener by the direction of the testator saw this official; he called at the testator's house on the 7th of February, where after conversation, testator expressly requested Mr. Fendrich to act as executor. The latter stated that he seemed to be in perfect mental health, although weak physically; he recalled particularly Mr. Wiles' request to see that $500 of money were sent to him at once, and outlined the manner in which it should be drawn, explaining for what purpose he needed it.

The attestation of the will is by three subscribing witnesses, two of whom were police officers well acquainted

with him; their testimony is emphatic that he was possessed of full and complete mental capacity; that while they did not discuss the character of the paper with him, that the scrivener, in their presence, asked the decedent if this was his will and if he desired their attestation.

Other witnesses who had known the decedent for years and who called at his place of business frequently before, at, and after the execution of this will, testified emphatically as to his knowledge of his property, and of affairs generally.

There was not a word of testimony showing any undue influence, fraud or duress on the part of the alleged wife. There is enough in the testimony to indicate that the surroundings and their manner of living is not worthy of emulation; but, there is nothing to indicate from the evidence any influence exerted by her over him which in any way constrained his will. Meretricious relationship of itself is no such evidence.

The overwhelming weight of the testimony as a whole clearly brings the facts of this case within the long line of decisions, of which Donnelly's Est., 227 Pa. 609; Schweitzer's Est., 228 Pa. 231, and Roup's Est., 236 Pa. 31, are samples, to-wit: that no issue should be granted, where on a review of all the testimony the judge would feel constrained by the weight of the evidence to set aside a verdict against the will. Measured by this test the issue is refused and the appeal is dismissed.

The court refused the petition. Elizabeth Hamilton appealed.

*Error assigned* was the decree of the court.

*W. C. Stillwagen,* for appellant.

*W. J. Brennen and Charles D. Gillespie,* for appellee.

PER CURIAM, January 2, 1915:

The decree of the Orphans' Court is affirmed for the reasons stated in the opinion of Judge MILLER.